**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ITOE PHILEMON SAKWE,
Petitioner,
v.
MARKWAYNE MULLIN, *et al.*,
Respondents.

Case No. 26-cv-02159-BAS-MMP

**ORDER GRANTING MOTION TO ENFORCE JUDGMENT (ECF No. 17)**

## I. BACKGROUND

Immigration and Customs Enforcement ("ICE") detained Petitioner Itoe Philemon Sakwe on January 26, 2025. (Am. Pet. at 2:16–17, ECF No. 9.) Petitioner sought asylum, claiming he faced persecution by the military in Cameroon. (*Id.* at Ex. A, ¶ 4.) Petitioner alleges he was wrongly accused of being a separatist fighter in Cameroon merely because he provided medical treatment, while working in a hospital, to an individual determined to be a separatist fighter. (*Id.*) This asylum claim was set for a merits hearing before an Immigration Judge on January 28, 2026. (*Id.* at 2:22–23.)

However, instead of addressing Petitioner's asylum claim with respect to his native country of Cameroon, the Government moved to pretermit his asylum application and requested that Petitioner be ordered removed to Uganda under the Department of

Homeland Security's controversial Asylum Cooperative Agreement ("ACA") with Uganda. (ECF No. 17.) The Immigration Judge agreed and ordered Petitioner removed to Uganda. (Am. Pet. at 2:23–24.) This pretermission ruling barred Petitioner from pursuing asylum relief in the United States without adjudicating the merits of his claim for protection from Cameroon. *See* 8 C.F.R. § 1240.11(h)(1)–(4). According to Petitioner, Uganda has accepted only eight deportees since the ACA was made in September 2025. (Mot. at 2:9–11.) Thus, there is only a slight possibility that this removal order will be effectuated.

On February 22, 2026, Petitioner appealed the Immigration Judge's ruling that Petitioner had to be removed to Uganda under the ACA. (Am. Pet. at 2:25–26.) Almost seven months later, that appeal remains pending. (*See id.* at 2:26.)

Petitioner has been in custody for over 18 months without any determination as to whether protection from removal to Cameroon is proper. Instead, he is currently facing a removal order to Uganda, an order that may or may not be enforceable. If there is a determination that removal to Uganda is improper, Petitioner will then finally be able to get his asylum claim with respect to Cameroon heard by an Immigration Judge. In short, Petitioner faces the likelihood of a very long time in immigration custody.

Against this backdrop, on April 30, 2026, this Court found Petitioner's detention had been arbitrarily and unreasonably prolonged. (Order Granting Am. Pet. ("Habeas Order") at 2:17–24, ECF No. 13.) In its Habeas Order, the Court directed a bond hearing before an Immigration Judge where the Government bore the burden to show by clear and convincing evidence that Petitioner posed a risk of flight or danger to the community if released. (*Id.* at 3:5–8.)

The Immigration Judge ("IJ") held the directed bond hearing. (Bond Hearing Tr., ECF No. 12-1.) The IJ found Petitioner is not a danger to the community if released but is a risk of flight. (*Id.* at 31–32.) Specifically, although the IJ found Petitioner's sponsor to be credible, he found Petitioner is a risk of flight because: (1) Petitioner has lost his asylum claim; (2) Petitioner has no residence or employment established in the United States; (3)

Petitioner's family in the United States is "very limited," despite that he has a cousin and a brother-in-law here; and (4) Petitioner had entered the United States illegally. (*Id.*)

Petitioner now moves to enforce the Court's judgment, arguing that the IJ failed to comply with the Habeas Order. (ECF No. 17.) The Government opposes. (ECF No. 19.)

## II. ANALYSIS

The Court agrees with Petitioner that, although the IJ gave lip service to the Habeas Order, in fact, the IJ failed to hold the Government to its burden of proving by clear and convincing evidence that Petitioner poses a flight risk. The Government initially argues that Petitioner has failed to exhaust his administrative remedies. However, because the Court finds the Immigration Judge failed to follow the Habeas Order, particularly regarding the standard of proof, the Court retains jurisdiction to enforce its judgment. *See, e.g.*, *Diallo v. Casey*, No. 26-cv-2167-RSH-BLM, 2026 WL 1834391, at *2 (S.D. Cal. June 25, 2026) ("Irrespective of the prudential exhaustion doctrine, however, the Court retains jurisdiction to determine whether a party has complied with its earlier habeas order." (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011))).

Under the Habeas Order, the IJ was required to hold the Government to the clear and convincing standard of proof with respect to Petitioner's risk of flight. That familiar standard requires "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *Evidence*, Black's Law Dictionary (12th ed. 2024); *see also, e.g.*, *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 & n.6 (1981). If a noncitizen poses a risk of flight, that means the individual is "likely to abscond." *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). In other words, the Government needed to demonstrate that it is highly probable or reasonably certain that Petitioner would fail to appear for future immigration proceedings. The Court finds the IJ failed to hold the Government to this standard for several reasons.

First, the IJ relied on the premise that Petitioner had lost his asylum claim. (Bond Hearing Tr. 32.) But Petitioner never had the opportunity to present his asylum claim.

Instead, his asylum application was pretermitted without a hearing on the merits of his request for asylum. *See* 8 C.F.R. § 1240.11(h)(1)–(4); *see also* 8 U.S.C. § 1158(a)(2).

Pretermission is not a denial on the merits and should not be treated as one in assessing flight risk. The pretermission ruling establishes only that Petitioner's asylum application was foreclosed on a threshold ground—not that his underlying claim lacks merit or that Petitioner no longer has an incentive to appear in immigration proceedings. Thus, the fact that Petitioner's asylum application was pretermitted does not constitute clear and convincing evidence that he poses a flight risk.

Second, the IJ relied heavily on the fact that Petitioner had entered the country illegally and had no residence or employment history in the United States. However, if these factors alone were sufficient to show clear and convincing evidence of risk of flight, there would be no need to hold a bond hearing following a finding of prolonged detention. In circumstances like these, every petitioner who claims they have been held for an arbitrarily and unreasonably prolonged period of time without a bond hearing is someone who has been mandatorily detained immediately upon entry. Thus, every petitioner with this claim has not had the opportunity to establish a residence or employment history. There would be little point in referring petitioners to the Immigration Court for a bond hearing if bond could be denied solely because the individual had not lived or worked in the United States. Indeed, in analogous circumstances, courts have rejected the reliance on evidence that is "common to *all* detainees" to meet the clear and convincing standard. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (reasoning the fact that the petitioner had been ordered removed is "a relevant factor," but that common factor does not alone "constitute clear and convincing evidence that [petitioner] presented a flight risk justifying denial of bond"), *abrogated on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795, at *2 (S.D. Cal. June 4, 2026) (reasoning that unlawful entry "is common among asylum seekers," and without "individualized evidence regarding the particular circumstances surrounding Petitioner's entry or other evidence of past noncompliance, it

is insufficient to support a reasonable inference of Petitioner's tendency toward future nonappearance"); *Bayani v. LaRose*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at *7 (S.D. Cal. May 8, 2026) (reasoning "the record of Petitioner's entrance into the country" lacked the needed probative value and specificity for risk of flight, and the IJ's reliance on this evidence "weighs strongly in favor of finding that the IJ failed to apply the proper standard at the hearing").

Additionally, the evidence in this case, not rejected by the IJ, was that Petitioner, upon entering the United States illegally, immediately sought out an immigration agent to request asylum. Thus, the IJ's reliance on the fact that Petitioner entered illegally is especially weak here, and this factor cannot establish that it is highly probable or reasonably certain that Petitioner is a flight risk. Finally, the IJ's determination that Petitioner had "limited family ties" in the United States is likewise insufficient to support the Government's burden to prove risk of flight by clear and convincing evidence.

Ultimately, this Court finds the IJ failed to follow the Habeas Order, which required the Government to prove by clear and convincing evidence that Petitioner poses a flight risk. There was no evidence presented at the bond hearing that would satisfy this standard. The IJ did not find that either Petitioner or his sponsor was not credible. To the contrary, the IJ found them both to be credible. Further, the fact that Petitioner had never lived or worked in the United States was an insufficient ground for finding a risk of flight and fell far short of satisfying the clear and convincing burden required of the Government. Thus, the Court will grant Petitioner's Motion.

## III. CONCLUSION

Because the Court finds the Immigration Judge failed to follow its order requiring a bond hearing at which the Government would have the burden of proving by clear and convincing evidence that Petitioner posed a risk of flight if released, the Court **GRANTS** the Motion to Enforce Judgment. (ECF No. 17.)

The Court also finds release is the appropriate remedy. The Habeas Order required the Government to hold a bond hearing using the appropriate standard of proof within 14

days. For the reasons explained above, the Government failed to do so. Because Petitioner remains subject to unlawfully prolonged detention and the Government did not comply with the Habeas Order, the Court finds immediate release necessary. *See Tiboko-Tifuh*, 2026 WL 1603795, at *4 (finding release was appropriate where the respondents did not comply with a prior order requiring a compliant bond hearing); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody."). Accordingly, the Court **ORDERS** that Itoe Philemon Sakwe be released forthwith, subject to appropriate conditions of supervision at the discretion of Respondents.

**IT IS SO ORDERED.**

**DATED: August 14, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**